ARRIOLA, COWAN AND ARRIOLA
MARK E. COWAN (Bar No. 73002)
ANITA P. ARRIOLA (Bar No. 89001)
259 Martyr St., Ste. 201
Hagåtña, GU 96910-5200
Telephone: (671) 477-9730
Facsimile: (671) 477-9734

MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD (Admitted *Pro Hac Vice*)
RENO F.R. FERNANDEZ III (Admitted *Pro Hac Vice*)
MATTHEW J. OLSON (Admitted *Pro Hac Vice*)
221 Sansome Street, Third Floor
San Francisco, CA 94104-2331
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Secured Creditor,
BANK OF GUAM

# DISTRICT COURT OF GUAM

# TERRITORY OF GUAM

# BANKRUPTCY DIVISION

| In re | Case No. 19-00010 |
|---|---|
| ARCHBISHOP OF AGAÑA, A Corporation Sole, | Chapter 11 |
| Debtor. | AMENDED STIPULATION FOR USE OF CASH COLLATERAL |

Bank of Guam (the "Bank"), secured creditor herein, and Archbishop of Agaña, A Corporation Sole, debtor and debtor in possession herein (the "Debtor in Possession"), hereby enter into this Amended Stipulation for ongoing use of cash collateral ("Stipulation") effective as of January 16, 2019:

## RECITALS

A. This case was commenced by the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code on January 16, 2019 ("Petition Date"), in the District Court of Guam ("Court"). No Trustee has been appointed and the debtor is in possession of its estate.

B.  The Bank is the lender pursuant to 11 promissory notes (the "Promissory Notes") executed by the Debtor in Possession with a total claim in the amount, as of December 31, 2018 of $10,133,785.88, see Exhibit A attached. Additionally, Debtor in Possession is indebted to the Bank

1

for the sum of $2,196,882.03 on account of the guarantee of debts of a related, but separately incorporated entity (Catholic Social Services), for total outstanding obligations to the Bank in the amount of $12,330,667.91. Pursuant to the terms of the Promissory Notes, as well as Section 553 of the Bankruptcy Code (11 U.S.C. § 553), the Promissory Notes are secured by deposit accounts maintained at Bank by Debtor in Possession, in either its name or one or more of its Parishes, schools and programs (the "DIP Constituencies"). Hence, and upon filing of the bankruptcy case, the Bank holds a perfected security interest in the Debtor in Possession's and the DIP Constituencies' cash and cash equivalents ("Cash") on deposit with the Bank, as more fully set forth on Exhibit "B" attached hereto, and that all of Debtor in Possession's and the DIP Constituencies' Cash on deposit at the Bank is cash collateral, as Bankruptcy Code section 363(a) defines such term ("Cash Collateral").[1]

C. As of the Petition Date, the Debtor in Possession's deposits at Bank are in the total approximate amount of $5,238,040.27 (the "Cash Collateral Amount"), as more fully set forth on Exhibit "B" attached hereto.

D. The Debtor in Possession and the DIP Constituencies have an immediate need to use the Cash Collateral to continue its operations, including operating schools and ministering to parishioners and the public through the several parishes. The Bank and the Debtor in Possession have negotiated this stipulation to allow for the immediate and on-going use of the Bank's Cash Collateral to fund the operations of the Debtor in Possession and the DIP Constituencies.

**AGREEMENT**

In light of the foregoing recitals, and for the consideration provided herein, the receipt and adequacy of which are hereby acknowledged, the Parties stipulate and agree as follows:

1. Continued Operations. Debtor in Possession (including the DIP Constituencies) may operate through June 30, 2019, in accordance with the Budget attached as Exhibit "C" and this Stipulation, and may spend up to the aggregate sum of $1,175,000 during each of January through

---

[1] Additionally, one promissory note is secured by a 2016 Hyundai Tucson.

April 2019 and $850,000 during May and June 2019. After the Bank approves a budget for subsequent periods and such budget is filed with the Court, the Debtor in Possession may operate in accordance with that budget, without further Court approval. Upon prior written notice to Bank, Debtor in Possession may exceed the budgeted amount for any line item expense by up to 5 percent so long as the total expenses in any calendar month do not exceed 105 percent of the total budgeted expenses for such month. With Bank's written agreement, Debtor in Possession may exceed the budgeted monthly amount, either on a line-item by line-item or aggregate basis, without Court approval. Notwithstanding the foregoing, this Stipulation does not waive or release any security interest the Bank holds in the Cash Collateral.

2. <u>Adequate Protection Payments</u>. Debtor in Possession or one or more of the DIP Constituencies, as the case may be, shall make an adequate protection payment to Bank in an amount equal to the combined ongoing debt service amount for the 11 outstanding loans (the total sum of $88,801.11 per month, including an interest-only payment on the Cathedral Basilica loan) on or before the due dates as scheduled in the Promissory Notes, and then again each month thereafter. In each case payments shall be made so as to be actually received by Bank by the applicable dates set forth in the preceding sentence. Payments shall be applied to loan principal (the "<u>Post-Petition Principal Reduction</u>") and reduce the Cash Collateral Amount on a dollar for dollar basis. Payments shall continue notwithstanding maturity of the loans until June 30, 2019, or any extended terms as set forth in paragraph 1.

3. <u>Minimum Deposits</u>. Debtor in Possession and the DIP Constituencies shall maintain, in the aggregate, deposits equal to 90 percent of the Cash Collateral Amount less the cumulative amount of Post-Petition Principal Reduction (the "<u>Minimum Deposit Amount</u>") at all times. With Bank's written agreement, Debtor in Possession or the DIP Constituencies may reduce the amount on deposit below the Minimum Deposit Amount without Court approval. Notwithstanding the foregoing, this Stipulation does not waive or release any security interest that Bank may hold in the Cash Collateral.

///

///

3

Case 19-00010    Document 172    Filed 05/02/19    Page 3 of 8

4. <u>Financial Reporting</u>.

    a. No later than February 15, 2019, Debtor in Possession shall provide Bank a written report that sets forth, with respect to each expense category in the Budget: (i) the actual Cash Debtor in Possession spent from the Petition Date through and including January 31, 2019; (ii) a comparison of actual amounts spent with budgeted amounts; and (iii) amounts payable but not yet paid.

    b. No later than March 15, 2019, and then the 15th day of each month thereafter, Debtor in Possession shall provide Bank a written report setting forth the information described in paragraph 3.a. for the preceding calendar month.

5. <u>Rights to Security Interest</u>. Subject to the bolded language in paragraph 9, Debtor in Possession affirms Bank's contractual right of setoff in the Cash Collateral is valid, and that the Bank's lien in the aforementioned 2016 Hyundai Tucson is valid, perfected, and unavoidable.

6. <u>Replacement Setoff Right</u>. Bank is granted a replacement right of setoff in and to all new cash deposits of Debtor in Possession at the Bank or elsewhere to which Bank's setoff rights would have attached but for the filing of Debtor in Possession's bankruptcy petition to the extent Debtor in Possession spends Cash or the value of Bank's collateral otherwise declines on or after the Petition Date (the "<u>Replacement Setoff Right</u>"), but in no case shall the combined amount of the Replacement Setoff Right and the Cash on deposit exceed the Cash Collateral Amount less the cumulative amount of Post-Petition Principal Reduction. The priority of the Replacement Setoff Right granted to Bank shall be in the same priority, nature, and extent as the Bank's right of set off that existed on the Petition Date. The Replacement Setoff Right granted shall be perfected by operation of law upon the Court's entry of an order approving this Stipulation. Bank shall not be required to file or record any financing statement or take any other action in order to perfect the Replacement Setoff Right granted hereunder. To the full extent that the Cash Collateral is deemed to be property of the Debtor in Possession's estate, the Replacement Setoff Right shall be enforceable against and binding upon the Debtor in Possession, its estate, and any successor thereto, including, without limitation, any trustee or other estate representative appointed in the case, or any

4

case under chapter 7 of the Bankruptcy Code upon the conversion of this case, or in any other proceeding superseding or related to any of the foregoing.

7. <u>Administrative Matters</u>. The Debtor in Possession will execute new signature cards for each deposit account at the Bank to include as an authorized signatory (a) the incumbent Archbishop of Agaña as the responsible individual for the Debtor in Possession (the "<u>Responsible Individual</u>") and (b) such other and subordinate officials as the Debtor in Possession deems necessary to authorize withdrawals from each particular deposit account. No deposit account shall be opened or closed without the express written authorization of the Responsible Individual.

8. <u>Termination</u>. This Stipulation shall terminate immediately upon the earlier of (i) Debtor in Possession's failure to comply with the terms of this Stipulation, including without limitation Debtor in Possession's failure (a) to operate in accordance with the Budget as set forth in the preceding paragraph 1, (b) to make either payment described in the preceding paragraph 2 by the deadlines set forth therein, the failure of the Debtor in Possession to maintain the Minimum Deposit Amount on deposit at the Bank described in the preceding paragraph 3, or (c) to provide the reports described in the preceding paragraph 4 by the deadlines set forth therein; (ii) appointment of a chapter 11 trustee in this bankruptcy case or conversion of this bankruptcy case to a case under chapter 7 of the Bankruptcy Code; or (iii) 14 days after a notice of termination is filed by either the Debtor in Possession or the Bank.

9. <u>Rights Reserved</u>. This Stipulation shall not affect or prejudice the rights or remedies of any Party other than as specifically provided herein, which rights include but are not necessarily limited to (i) Bank's right to file a motion for relief from the automatic stay imposed by the filing of Debtor in Possession's bankruptcy petition or to file or support a motion for appointment of a chapter 11 trustee or conversion of this case to a case under chapter 7 of the Bankruptcy Code; and (ii) Debtor in Possession's right to oppose any such motion. Nothing in this Stipulation constitutes an admission by Bank that Bank is adequately protected against a decline in the value of Bank's collateral. Notwithstanding anything to the contrary in this paragraph, Debtor in Possession shall not seek Court authorization to use Cash or Cash Collateral in Bank of Guam accounts other than in accordance with this Stipulation during the term of this Stipulation. Moreover, nothing in this

5

stipulation nor any order entered hereon shall bind any party to the bankruptcy proceeding, including the Official Committee of Unsecured Creditors, with respect to the characterization of any asset as property of the estate or not property of the estate, or the characterization of any claim as a claim against the Debtor in Possession (whether directly or as a fiduciary for another). Any disputes regarding these issues will be resolved by the relevant parties in interest in another contested matter, an adversary proceeding, or a proceeding before another court of competent jurisdiction. **In the event that any portion of the Cash Collateral is ultimately determined by such court to not be property of the Debtor in Possession's bankruptcy estate (the "<u>Excluded Cash Collateral</u>"), this Stipulation and any orders thereon shall be void *ab initio* and ineffectual with respect to the Excluded Cash Collateral, and any replacement setoff rights, liens, other rights, or claims created by this Stipulation, or created by any order thereon, against the Excluded Cash Collateral or property the of the estate traceable to the Excluded Cash Collateral shall be unenforceable and of no further force or effect, but the Bank's rights against the Excluded Cash Collateral under applicable nonbankruptcy law shall be not be affected.**

10. <u>Notices</u>. All notices, payments, reports, and other communications made or given pursuant to this Stipulation may be sent by e-mail, overnight delivery, or regular or certified first-class United States mail, postage prepaid, as follows:

    (a) To Debtor in Possession:
Most Rev. Michael J. Byrnes, S.T.D.
Archbishop of Agaña
196 Cuesta San Ramon Ste B,
Hagåtña, GU 96910-4000

<u>with a copy to:</u>

Ford Elsaesser and Bruce Anderson
Elsaesser Anderson, Chtd.
414 Church Street, Suite 201
Sandpoint, ID 83864-0070
ford@eaidaho.com and brucea@eaidaho.com

    (b) To Bank:
Danilo M. Rapadas
Senior Vice President & General Counsel
Bank of Guam
111 Chalan Santo Papa, Suite 400
Hagåtña, GU 96910-5198
drapadas@bankofguam.com

6

Case 19-00010   Document 172   Filed 05/02/19   Page 6 of 8

with a copy to:

Iain A. Macdonald and Matthew J. Olson
Macdonald Fernandez LLP
221 Sansome Street, Third Floor
San Francisco, CA 94104
imac@macfern.com and matt@macfern.com

and to:

Mark E. Cowan
Arriola, Cowan and Arriola
259 Martyr St., Ste. 201
Hagåtña, GU 96910-5200
mcowan@arriolacowan.com

11. <u>Neutral Construction.</u> The Parties agree that any rule of construction to the effect that ambiguities are resolved against the drafting party shall not apply to the interpretation of this Stipulation.

12. <u>Entire Agreement.</u> This Stipulation contains the entire agreement of the Parties with respect to the subject matter of this Stipulation. There are no representations, agreements, arrangements, or understandings, oral or written, between the Parties relating to the subject matter of this Stipulation that are not fully expressed herein. In the event of any conflict between this Stipulation and the Budget or the Interim Order, the terms of this Stipulation shall control.

13. <u>Counterparts.</u> This Stipulation may be executed in any number of identical counterparts, each of which shall be deemed to be an original, and all of which together shall constitute one and the same instrument. Signatures to this Stipulation transmitted by e-mail shall be sufficient to bind the signing Party and shall have the same force and effect as an original.

14. <u>Bankruptcy Court Approval; Parties Bound.</u> The effectiveness of this Stipulation is subject to Court approval. Once signed by the Parties and approved by the Court, this Stipulation shall be binding on Bank, Debtor in Possession, Debtor in Possession's bankruptcy estate, any committee appointed in this bankruptcy case and any successors or assigns of Bank or Debtor in Possession, including but not limited to any trustee appointed in this bankruptcy case.

[Signatures begin on the following page.]

7

IT IS SO STIPULATED.

DATED: April ___, 2019

ARCHBISHOP OF AGAÑA, A Corporation Sole, Debtor in Possession

By: _____
Most Rev. Michael J. Byrnes, S.T.D.
Archbishop of Agaña

DATED: April 29, 2019

BANK OF GUAM

By: _____
Danilo M. Rapadas
Senior Vice President & General Counsel

APPROVED AS TO FORM:

DATED: April ___, 2019

ELSAESSER ANDERSON, CHTD.

By: _____
Ford Elsaesser
Bruce Anderson
Attorneys for Debtor in Possession,
ARCHBISHOP OF AGAÑA, A Corporation Sole

DATED: April 29, 2019

MACDONALD | FERNANDEZ LLP

By: _____
Iain A. Macdonald
Matthew J. Olson
Attorneys for Secured Creditor,
BANK OF GUAM