Ford Elsaesser, ISB #2205
Bruce A. Anderson, ISB #3392
ELSAESSER ANDERSON, CHTD.
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
Tel: (208) 667-2900
Fax: (208) 667-2150
ford@eaidaho.com
brucea@eaidaho.com

John C. Terlaje
LAW OFFICE OF JOHN C. TERLAJE
Terlaje Professional Bldg., Suite 216
194 Hernan Cortez Ave.
Hagåtña, Guam 96910
Telephone: (671) 477-8894/5
john@terlaje.net

*Counsel for Debtor-in-Possession*

# IN THE DISTRICT COURT OF GUAM
## TERRITORY OF GUAM
## BANKRUPTCY DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| ARCHBISHOP OF AGAÑA, a Corporation Sole, | Case No. 19-00010 |
| Debtor. | |

## NOTICE OF SECOND OFFER TO PURCHASE REAL PROPERTY (ACCION HOTEL PROPERTY, DOCKET 127)

**TO: CREDITORS AND PARTIES OF INTEREST:**

COMES NOW The Archbishop of Agaña, a Corporate Sole, the Debtor and Debtor-in-Possession ("Archbishop"), and reports to the Court that a second offer has been received by the Archbishop on the property proposed to be sold pursuant to the Motion for Authorization to Sell Real Property (Docket No. 127) as follows, with pertinent terms set

NOTICE OF SECOND OFFER TO PURCHASE
REAL PROPERTY (ACCION HOTEL)- 1

forth below and, with the Commercial Property Purchase Agreement and Joint Escrow Instructions and Seller's Response to Offer dated May 15, 2019, attached as Exhibit A:

1. Purchase price is $5,600,000.00.

2. Earnest money deposit is $100,000.00. Earnest money is non-refundable, if Buyer is unable to close the transaction under the existing offer only.

3. Closing - Buyer to close escrow within five days from Seller's notification and Bankruptcy Court approval.

4. Buyer to provide proof of sufficient funds to close this transaction on or before May 30, 2019.

5. Contingencies related to Buyer's investigation of property and matters effecting property shall be approved or waived on or before May 30, 2019.

With respect to all other terms and conditions and description of the real property to be sold, please refer to the Motion for Authorization to Sell Real Property, Docket No. 127.

RESPECTFULLY SUBMITTED this 30 day of May, 2019.

ELSAESSER ANDERSON, CHTD.

/s/ *Bruce A. Anderson*
Ford Elsaesser
Bruce A. Anderson

-and-

THE LAW OFFICE OF JOHN C. TERLAJE

/s/ *John C. Terlaje*
John C. Terlaje

NOTICE OF SECOND OFFER TO PURCHASE
REAL PROPERTY (ACCION HOTEL) - 2

Case 19-00010   Document 194   Filed 05/30/19   Page 2 of 15

## CERTIFICATE OF SERVICE

I hereby certify that, on May 30, 2019, in accordance with Fed. R. Civ. P. 5(b)(3), a true copy of the foregoing was served via the Court's CM/ECF notification facilities to those parties who are registered CM/ECF participants in this case, and the U.S. Trustee.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: May 30, 2019          /s/ *Bruce A. Anderson*
                                                              Bruce A. Anderson



# COMMERCIAL PROPERTY PURCHASE AGREEMENT
# AND JOINT ESCROW INSTRUCTIONS
(NON-RESIDENTIAL)
(G.A.R. Form CPA, Revised 6/2013)

Security Title.
2019-05290(?)
ESCROW NUMBER
CHERRI MENDOZA
ESCROW OFFICER

Date: **May 15, 2019**

1. **OFFER:**
   A. **THIS IS AN OFFER FROM** _SAIED SAFABAKHSH_ ("Buyer").
      ☒ Individual(s), ☐ A Corporation, ☐ A Partnership, ☐ An LLC, ☐ An LLP, or ☐ Other _____
   B. **THE REAL PROPERTY TO BE ACQUIRED** is described as _Chalan Senimario (Hotel Accion), Yona, GU 96915_, Assessor's Parcel No. _____,
      situated in Village of _Yona_, Legal Description _Lot 90-2-R1-RNEW-R3,3,2, Municipality of Yona, GU_ ("Property").
   C. **THE PURCHASE PRICE** offered is _Five Million, Six Hundred Thousand_
      (Dollars $ _5,600,000.00_).
   D. **CLOSE OF ESCROW** shall occur on _June 15, 2019_ (date) (or ☐ _N/A_ Days After Acceptance).
2. **AGENCY:**
   A. **POTENTIALLY COMPETING BUYERS AND SELLERS:** Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-representation agreement or separate document. Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.
   B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
      Listing Agent _RE/MAX Diamond Realty_ (Print Firm Name) is the agent
      of (check one): ☒ the Seller exclusively; or ☐ both the Buyer and Seller.
      Selling Agent _Alliance Realty, LLC_ (Print Firm Name) (if not same
      as Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller.
      Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
3. **FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.
   A. **INITIAL DEPOSIT:** Deposit shall be in the amount of .......................................... $ _100,000.00_
      (1) Buyer shall deliver deposit directly to Escrow Holder by personal check, ☐ electronic funds transfer,
      ☐ Other _N/A_ within 3 business days after acceptance
      (or ☐ Other _N/A_ );
      OR (2) (If checked) ☐ Buyer has given the deposit by personal check (or ☐ _N/A_ ) to
      the agent submitting the offer (or to ☐ _N/A_ ), made payable to
      _N/A_. The deposit shall be held uncashed until Acceptance and
      then deposited with Escrow Holder (or ☐ into Broker's trust account) within 3 business days after
      Acceptance (or ☐ Other _N/A_ ).
   B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of .. $ _____
      within _____ Days After Acceptance, or ☐ _N/A_ _____.
   C. **LOAN(S):**
      (1) **FIRST LOAN** in the amount of .................................................. $ _____
      This loan will be conventional financing or, if checked, ☐ Seller, ☐ assumed (G.A.R. Form PAA),
      ☐ subject to financing, ☐ Other _N/A_ . This
      loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial
      rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to
      exceed _____ % of the loan amount.
      (2) ☐ **SECOND LOAN** in the amount of .............................................. $ _____
      This loan will be conventional financing or, if checked, ☐ Seller, ☐ assumed (G.A.R. Form PAA),
      ☐ subject to financing, ☐ Other _N/A_ . This
      loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial
      rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to
      exceed _____ % of the loan amount.
   D. **ADDITIONAL FINANCING TERMS:** _N/A_ $ _____
   E. **BALANCE OF PURCHASE PRICE OR DOWN PAYMENT** in the amount of ................ $ _5,500,000.00_
      to be deposited with Escrow Holder within sufficient time to close escrow.
   F. **PURCHASE PRICE (TOTAL):** ....................................................... $ _5,600,000.00_
   G. **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to 3H(1) shall, within 7 (or ☐ _____ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. (If checked, ☐ verification attached.)
   H. **LOAN TERMS:**
      (1) **LOAN APPLICATIONS:** Within 7 (or ☐ _____ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in 3C above. (If checked, ☐ letter attached.)
      (2) **LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Obtaining the loan(s) specified above is a contingency of this Agreement unless otherwise agreed in writing. Buyer's contractual obligations to obtain

Buyer's Initials ( _S_ ) ( _____ )                                    Seller's Initials ( _____ ) ( _____ )
© 2013, Guam Association of REALTORS®, Inc.                            Reviewed by _____ Date _____
CPA REVISED 6/2013 (PAGE 1 OF 9)                                                                    **EXHIBIT A**

COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 1 OF 9)

Alliance Realty, 238 Arch Bishop Flores St Unit 908 Hagatna, GUAM, GU 96910    Phone: 671-637-3333    Fax: 671-637-3335
Jesse Leon Guerrero    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Case 19-00010  Document 194  Filed 05/30/19  Page 4 of 15

Property Address: *Chalan Senimario (Hotel Accion)* Yona, GU 96915      Date: *May 15, 2019*

and provide deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

**(3) LOAN CONTINGENCY REMOVAL:**
(i) Within **17** (or ☐ _____) Days After Acceptance, Buyer shall, as specified in Paragraph 17, in writing remove the loan contingency or cancel this Agreement;
OR (ii) (If checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.
**(4) ☐ NO LOAN CONTINGENCY** (If checked): Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

I. **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or, if checked, ☐ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the specified purchase price. If there is a loan contingency, Buyer's removal of the loan contingency shall be deemed removal of this appraisal contingency (or, ☐ if checked, Buyer shall, as specified in paragraph 17B(3), in writing remove the appraisal contingency or cancel this Agreement within **17** (or _____ ) Days After Acceptance). If there is no loan contingency, Buyer shall, as specified in paragraph 17B(3), in writing remove the appraisal contingency or cancel this Agreement within **17** (or _____) Days After Acceptance.

J. ☐ **ALL CASH OFFER** (If checked): Buyer shall, within **7** (or ☐ _____) Days After Acceptance, Deliver to Seller written verification of sufficient funds to close this transaction. (If checked, ☐ verification attached.)

K. **BUYER STATED FINANCING:** Seller has relied on Buyer's representation of the type of financing specified (including but not limited to, as applicable, amount of down payment, contingent or non contingent loan, or all cash). If Buyer seeks alternate financing, (i) Seller has no obligation to cooperate with Buyer's efforts to obtain such financing, and (ii) Buyer shall also pursue the financing method specified in this Agreement. Buyer's failure to secure alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

4. **ALLOCATION OF COSTS** (if checked ): Unless otherwise specified in writing, **this paragraph** only determines who is to pay for the inspection, test or service ("Report") mentioned; **it does not determine in the report who is to pay for any work recommended or identified in the Report.**
   A. **INSPECTIONS AND REPORTS:**
   (1) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal system inspected *N/A*
   (2) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity *N/A*
   (3) ☐ Buyer ☐ Seller shall pay for the following inspection or report *N/A*
   (4) ☐ Buyer ☐ Seller shall pay for the following inspection or report *N/A*
   B. **GOVERNMENT REQUIREMENTS AND RETROFIT:**
   (1) ☐ Buyer ☐ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.
   (2) ☐ Buyer ☐ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law.
   (3) ☐ Buyer ☐ Seller shall pay for installation of approved fire extinguisher(s), sprinkler(s), and hose(s), if required by Law, which shall be installed prior to Close Of Escrow. Prior to Close Of Escrow Seller shall provide Buyer a written statement of compliance, if required by Law.
   C. **ESCROW AND TITLE:**
   (1) ☒ Buyer ☒ Seller shall pay escrow fee *50/50*
   Escrow Holder shall be *Security Title, Inc.*
   (2) ☒ Buyer ☐ Seller shall pay for **owner's** title insurance policy specified in paragraph 16E
   Owner's title policy to be issued by _____
   (Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)
   D. **OTHER COSTS:**
   (1) ☒ Buyer ☒ Seller shall pay County transfer tax or transfer recording fee *50/50*
   (2) ☒ Buyer ☒ Seller shall pay OA document preparation fees *50/50*
   (3) ☐ Buyer ☐ Seller shall pay for *N/A*
   (4) ☐ Buyer ☐ Seller shall pay for *N/A*

5. **CLOSING AND POSSESSION:**
   A. **Seller-Occupied or Vacant Units:** Possession shall be delivered to Buyer at 5pm or ☒ _____ ☐ AM ☒ PM, ☒ on the date of Close Of Escrow; ☐ on *May 14, 2019* ; or ☐ no later than *N/A* Days After Close Of Escrow. If transfer of title and occupancy do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement (G.A.R. Form PAA, paragraph 2); and (ii) consult with their insurance and legal advisors.
   B. **Tenant Occupied Units:** Possession and occupancy, subject to the rights of tenants under existing leases, shall be delivered to Buyer on Close Of Escrow.
   C. At Close Of Escrow, (i) Seller assigns to Buyer any assignable warranty rights for items included in the sale and (ii) seller shall deliver to buyer available Copies of warranties. Brokers cannot and will not determine the assignability of any warranties.
   D. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If the Property is a unit in a condominium or located in a common-interest subdivision, Buyer may be required to pay a deposit to the Owners' Association ("OA") to obtain keys to accessible OA facilities.

6. **SECURITY DEPOSITS:** Security deposits, if any, to the extent they have not been applied by Seller in accordance with any rental agreement and current Law, shall be transferred to Buyer on Close Of Escrow. Seller shall notify each tenant.

Buyer's Initials ( JJ )( _____ )      Seller's Initials ( _____ )( _____ )
CPA REVISED 6/2013 (PAGE 2 OF 9)      Reviewed by _____ Date _____
COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 2 OF 9)
Case 19-00010 Document 194 Filed 05/30/19 Page 5 of 15
Action Hotel.

Property Address: *Chalan Senimario (Hotel Accion)*
*Yona, GU 96915*                 Date: *May 15, 2019*

7. **SELLER DISCLOSURES:**
    A. **NATURAL AND ENVIRONMENTAL DISCLOSURES:** Seller shall, within the time specified in paragraph 17, if required by Law even if exempt from the obligation to provide an NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area.
    B. **ADDITIONAL DISCLOSURES:** Within the time specified in paragraph 17, Seller shall Deliver to Buyer, in writing, the following disclosures, documentation and information:
        (1) **RENTAL SERVICE AGREEMENTS:** (i) All current leases, rental agreements, service contracts, and other agreements pertaining to the operation of the Property; and (ii) a rental statement including names of tenants, rental rates, period of rental, date of last rent increase, security deposits, rental concessions, rebates, or other benefits, if any, and a list of delinquent rents and their duration. Seller represents that no tenant is entitled to any concession, rebate, or other benefit, except as set forth in these documents.
        (2) **INCOME AND EXPENSE STATEMENTS:** The books and records, including a statement of income and expense for the 12 months preceding Acceptance. Seller represents that the books and records are those maintained in the ordinary and normal course of business, and used by Seller in the computation of federal and state income tax returns.
        (3) ☐ **TENANT ESTOPPEL CERTIFICATES:** (If checked) Tenant estoppel certificates completed by Seller or Seller's agent, and signed by tenants, acknowledging: (i) that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); (ii) that no lessor defaults exist; and (iii) stating the amount of any prepaid rent or security deposit.
        (4) **SURVEYS, PLANS AND ENGINEERING DOCUMENTS:** Copies of surveys, plans, specifications and engineering documents, if any, in Seller's possession or control.
        (5) **PERMITS:** If in Seller's possession, Copies of all permits and approvals concerning the Property, obtained from any governmental entity, including, but not limited to, certificates of occupancy, conditional use permits, development plans, and licenses and permits pertaining to the operation of the Property.
        (6) **STRUCTURAL MODIFICATIONS:** Any known structural additions or alterations to, or the installation, alteration, repair or replacement of, significant components of the structure(s) upon the Property.
        (7) **GOVERNMENTAL COMPLIANCE:** Any improvements, additions, alterations or repairs made by Seller, or known to Seller to have been made, without required governmental permits, final inspections, and approvals.
        (8) **VIOLATION NOTICES:** Any notice of violations of any Law filed or issued against the Property and actually known to Seller.
        (9) **MISCELLANEOUS ITEMS:** Any of the following, if actually known to Seller: (i) any current pending lawsuit(s), investigation(s), inquiry(ies), action(s), or other proceeding(s) affecting the Property, or the right to use and occupy it; (ii) any unsatisfied mechanic's or materialman's lien(s) affecting the Property; and (iii) that any tenant of the Property is the subject of a bankruptcy.
    C. **WITHHOLDING TAXES:** Within the time specified in paragraph 17A, to avoid required withholding Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA).
8. ☐ **ENVIRONMENTAL SURVEY** (If checked): Within _____ *N/A* _____ Days After Acceptance, Buyer shall be provided a phase one environmental survey report paid for and obtained by ☐ Buyer ☐ Seller. Buyer shall then, as specified in paragraph 17, remove this contingency or cancel this Agreement.
9. **SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly Deliver a subsequent or amended disclosure or notice in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.
10. **CHANGES DURING ESCROW:**
    A. Prior to Close Of Escrow, Seller may only engage in the following acts, ("Proposed Changes"), subject to Buyer's rights in paragraph 17: (i) rent or lease any vacant unit or other part of the premises; (ii) alter, modify, or extend any existing rental or lease agreement; (iii) enter into, alter, modify or extend any service contract(s); or (iv) change the status of the condition of the Property.
    B. At least 7 (or ☐ _____ *N/A* _____ ) Days prior to any Proposed Changes, Seller shall Deliver written notice to Buyer of any Proposed Changes.
11. **CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:**
    A. **SELLER HAS:** 7 (or ☐ _____ *N/A* _____ ) Days After Acceptance to disclose to Buyer whether the Property is a condomimium, or located in a planned unit development or other common interest subdivision.

Buyer's Initials ( *JS* )( _____ )      Seller's Initials ( _____ )( _____ )

CPA REVISED 6/2013 (PAGE 3 OF 9)      Reviewed by _____ Date _____

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 3 OF 9)**



Action Hotel.

Property Address: Chalan Senimario (Hotel Accion) Yona, GU 96915                                      Date: May 15, 2019

B. If Property is a condominium, or located in a planned unit development or other common interest subdivision, Seller has 3 (or ☐ N/A ) Days After Acceptance to request from the OA (G.A.R. Form HOA): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the OA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **and (iv)** the names and contact information of all OA's governing the Property. Seller shall itemize and deliver to Buyer all CI Disclosures received from the OA. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 17.

12. **ITEMS INCLUDED AND EXCLUDED:**
    A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 12B or C.
    B. **ITEMS INCLUDED IN SALE:**
       (1) All EXISTING fixtures and fittings that are attached to the Property.
       (2) EXISTING electrical, mechanical, lighting, plumbing, ceiling fans, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms.
       (3) A complete inventory of all personal property of Seller currently used in the operation of the Property and included in the purchase price shall be delivered to Buyer within the time specified in paragraph 17.
       (4) Seller represents that all items included in the purchase price are, unless otherwise specified, owned by Seller. Within the time specified in paragraph 17, Seller shall give Buyer a list of fixtures not owned by Seller.
       (5) Seller shall deliver title to the personal property by Bill of Sale, free of all liens and encumbrances, and without warranty of condition.
    C. **ITEMS EXCLUDED FROM SALE:** N/A

13. **CONDITION OF PROPERTY:** Unless otherwise agreed: **(i) Property is sold (a) in its PRESENT physical ("as-is") condition as of the date of Acceptance and (b) subject to Buyer's investigation rights;** (ii) The Property including pool, spa, landscaping and grounds, is to be maintained in substantially, the same condition as of the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Seller by Close Of Escrow.
    A. Seller warrants that the Property is legally approved as ___N/A___ units.
    B. Seller shall, within the time specified in paragraph 17, **DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE ANY AND ALL OTHER DISCLOSURES REQUIRED BY LAW.**
    C. **Buyer has the right to inspect the Property and, as specified in paragraph 17, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that seller make Repairs or take other action.**

14. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
    A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 17B. Within the time specified in paragraph 17B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: **(i)** inspect for lead-based paint and other lead-based paint hazards; **(ii)** inspect for wood destroying pests and organisms; **(iii)** review the registered sex offender database; **(iv)** confirm the insurability of Buyer and the Property; and **(v)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (G.A.R. Form BIA-A). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.
    B. Seller shall make the Property available for all Buyer Investigations. Buyer shall (i) as specified in paragraph 17B, complete Buyer Investigations and, either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
    C. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
    D. **Buyer indemnity and Seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs of Buyer's Investigations. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination or cancellation of this Agreement and Close Of Escrow.

15. **SELLER DISCLOSURES: ADDENDA; ADVISORIES; OTHER TERMS:**
    A. **Seller Disclosures (if checked):** ☐Seller shall, within the time specified in paragraph 17A, complete and provide Buyer with a:

    B. **Addenda (if checked):**                                              ☐ Addendum #            (G.A.R. Form ADM)

Buyer's Initials ( SS ) ( _____ )                    Seller's Initials ( _____ ) ( _____ )
                                                      Reviewed by _____ Date _____
CPA REVISED 6/2013 (PAGE 4 OF 9)
**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 4 OF 9)**                    Action Hotel

Property Address: *Chalan Senimario (Hotel Accion)*
*Yona, GU 96915*           Date: *May 15, 2019*

- ☐ Wood Destroying Pest Inspection and Allocation of Cost Addendum (G.A.R. Form WPA)
- ☐ Purchase Agreement Addendum (G.A.R. Form PAA)     ☐ Other
- ☐ Short Sale Addendum (G.A.R. Form SSA)     ☐ Seller Intent to Exchange Supplement (G.A.R. Form SES)
- ☐ Buyer Intent to Exchange Supplement (G.A.R. Form BES)

**C. Advisories (If checked):**     ☐ Buyer's Inspection Advisory (G.A.R. Form BIA-A)

**D. Other Terms:** *N/A*

**16. TITLE AND VESTING:**
  A. Within the time specified in paragraph 17, Buyer may obtain a current preliminary title report, which shall include a search of the General Index, Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information. The preliminary report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 17B.
  B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.
  C. Within the time specified in paragraph 17, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.
  D. At Close Of Escrow, Buyer shall receive a deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.
  E. Buyer may obtain a standard coverage owner's ALTA policy of title insurance or the addition of endorsements which may provide greater coverage for Buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, survey requirements, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

**17. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS:** The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (G.A.R. Form CR or CC).
  A. **SELLER HAS: 7** (or ☐ _*N/A*_ ) Days After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 4, 7A, B and C, 11A, 12B(3) and (4), 13B, 15A and B and 16. Buyer may give Seller a Notice to Seller to Perform (G.A.R. Form NSP) if Seller has not Delivered the items within the time specified.
  B. (1) **BUYER HAS: 17** (or ☐ _*N/A*_ ) Days After Acceptance, unless otherwise agreed in writing, to:
    (i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and (ii) approve all other matters affecting the Property (including information specified in paragraph 7 and insurability of Buyer and the Property).
    (2) Within the time specified in 17B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (G.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.
    (3) Within the time specified in 17B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller either (i) a removal of the applicable contingency (G.A.R. Form CR), or (ii) a cancellation (G.A.R. Form CC) of this Agreement based upon a remaining contingency or Seller's failure to Deliver the specified items. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in 17A, then Buyer has **5** (or ☐ _*N/A*_ ) Days After Delivery of any such items, or the time specified in 17B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.
    (4) **Continuation of Contingency:** Even after the end of the time specified in 17B(1) and before Seller cancels this Agreement, if at all, pursuant to 17C, Buyer retains the right to either (i) in writing remove remaining contingencies, or (ii) cancel this Agreement based upon a remaining contingency or Seller's failure to Deliver the specified items. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to 17C(1).
  C. **SELLER RIGHT TO CANCEL:**
    (1) **Seller right to Cancel; Buyer Contingencies:** If, within the time specified in this Agreement, Buyer does not, in writing, Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (G.A.R. Form NBP) may cancel this Agreement. In such event, Seller shall authorize return of Buyer's deposit.
    (2) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first Delivering to Buyer a NBP may cancel this Agreement for any of the following reasons: (i) if Buyer fails to deposit funds as required by 3A or 3B; (ii) if the funds deposited pursuant to 3A or 3B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 3H; (iv) if Buyer fails to provide verification as required by 3G or 3J; or (v) if Seller reasonably disapproves of the verification provided by 3G or 3J. In such event, Seller shall authorize return of Buyer's deposit.
    (3) **Notice To Buyer To Perform:** The NBP shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least **2** (or ☐ _*N/A*_ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP may not be Delivered any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet an obligation specified in 17C(2).

Buyer's Initials ( *JS* ) ( _____ )        Seller's Initials ( _____ ) ( _____ )

CPA REVISED 6/2013 (PAGE 5 OF 9)     Reviewed by _____ Date _____

COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 5 OF 9)



Action Hotel.

Case 19-00010   Document 194   Filed 05/30/19   Page 8 of 15

*Chalan Senimario (Hotel Accion)*
Property Address: **Yona, GU 96915** Date: **May 15, 2019**

D. **EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall with regard to that contingency or cancellation right conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections, or for inability to obtain financing.

E. **CLOSE OF ESCROW:** Before Seller or Buyer may cancel this Agreement for failure of the other party to close escrow pursuant to this Agreement, Seller or Buyer must first Deliver to the other a demand to close escrow (G.A.R. Form DCE).

F. **EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. **Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award.**

18. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of receipts and statements to Buyer prior to final verification of condition.

19. ~~ENVIRONMENTAL HAZARD CONSULTATION:~~ Buyer and Seller acknowledge: ~~(i)~~ ~~Federal,~~ ~~state,~~ and ~~local~~ ~~legislation~~ impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; **(ii)** Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; **(iii)** Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and **(iv)** Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.

20. **AMERICANS WITH DISABILITIES ACT:** The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. The ADA can require, among other things, that buildings be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Property is not in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect, engineer or other qualified professional of Buyer's or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

21. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final inspection of the Property within 5 (or _____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 13; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (G.A.R. Form VP).

22. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: HOA special assessments that are a current lien but not yet due. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller. Prorations shall be made based on a 30-day month.

23. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

24. **MULTIPLE LISTING SERVICE/PROPERTY DATA SYSTEM:** If Broker is a participant of a Multiple Listing Service ("MLS"), Broker is authorized to report to the MLS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

25. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

26. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 34A.

27. **DEFINITIONS:** As used in this Agreement:
    A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.

Buyer's Initials ( *SS* ) ( _____ )   Seller's Initials ( _____ ) ( _____ )

CPA REVISED 6/2013 (PAGE 6 OF 9)   Reviewed by _____ Date _____

**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 6 OF 9)**   Action Hotel.

Case 19-00010   Document 194   Filed 05/30/19   Page 9 of 15

Property Address: *Chalan Senimario (Hotel Accion)* Yona, GU 96915    Date: May 15, 2019

- B. **"G.A.R. Form"** means the specific form referenced or another comparable form agreed to by the parties.
- C. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded.
- D. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
- E. **"Days"** means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
- F. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
- G. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
- H. **"Deliver", "Delivered"** or **"Delivery"**, regardless of the method used (i.e. messenger, mail, email, fax, other), means and shall be effective upon (i) personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in paragraph D of the section titled Real Estate Brokers on page 10;
- OR (ii) if checked, ☐ per the attached addendum (G.A.R. Form RDN).
- I. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with Guam Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
- J. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
- K. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
- L. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

28. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interests in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld, unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement.
29. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.
30. **COPIES:** Seller and Buyer each represent that Copies of all reports, documents, certificates, approvals and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.
31. **BROKERS:**
    - A. **BROKER COMPENSATION:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.
    - B. **BROKERAGE:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Property, including, but not limited to, inquiries, introductions, consultation and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify, defend, and hold the other, the Brokers specified herein and their agents, harmless from and against any costs, expenses or liability for compensation claimed inconsistent with the warranty and representations in this paragraph.
    - C. **SCOPE OF BROKER DUTY:** Buyer and Seller acknowledge and agree that: Brokers: (i) do not decide what price Buyer should pay or Seller should accept; (ii) do not guarantee the condition of the Property (iii) do not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) shall not be responsible for identifying defects that are not known to Brokers(s); (v) shall not be responsible for inspecting public records or permits concerning the title or use of the Property; (vi) shall not be responsible for identifying location of boundary lines or other items affecting title; (vii) shall not be responsible for verifying square footage, representations of others or information contained in inspection reports, MLS, advertisements, flyers or other promotional material, unless otherwise agreed in writing; (viii) shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller in the course of this representation; and (ix) shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.
32. **JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER**
    - A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any relating counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 3, 4, 6, 7C, 15B and D, 16, 17F, 22, 27, 31A, 32, 37, 40 and paragraph D of the section titled Real Estate Brokers on page 10. If a Copy of the separate compensation agreement(s) provided for in paragraph 31A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out of Buyer's or Seller's funds, or both, as applicable, the respective Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not specifically referenced above in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.
    - B. A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐ _____ ). Escrow holder shall provide Seller's Statement of Information to Title company when received from Seller. Buyer and Seller

Buyer's Initials ( *SS* ) ( _____ )    Seller's Initials ( _____ ) ( _____ )

CPA REVISED 6/2013 (PAGE 7 OF 9)    Reviewed by _____ Date _____

COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 7 OF 9)

Case 19-00010 Document 194 Filed 05/30/19 Page 10 of 15

Action Hotel.

Chalan Senimario (Hotel Accion)
Property Address: Yona, GU 96915                                           Date: May 15, 2019

    authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs the Agreement.

C. Brokers are a party to the Escrow for the sole purpose of compensation pursuant to paragraph 31A and paragraph D of the section titled Real Estate Brokers on page 10. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 31A, respectively, and irrevocably instructs Escrow Holder to disburse those funds to Brokers at Close Of Escrow, or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement or is not good at time of deposit with Escrow Holder; or (ii) if either Buyer or Seller instruct Escrow Holder to cancel escrow.

D. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

33. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.

| Buyer's Initials _____ / _____ | Seller's Initials _____ / _____ |
|---|---|

34. **DISPUTE RESOLUTION:**
   A. **MEDIATION:** ☐ If checked the parties agree to mediate any dispute or claim arising between them regarding the Agreement.
35. **GOVERNING LAW:** This Agreement shall be governed by the Laws of the Territory of Guam.
36. **TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initiated by all parties or if incorporated by mutual agreement in a counter offer on addendum. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.
37. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**
38. **AUTHORITY:** Any person or persons signing this Agreement represent(s) that such person has full power and authority to bind that person's principal, and that the designated Buyer and Seller has full authority to enter into and perform this Agreement. Entering into this Agreement, and the completion of the obligations pursuant to this contract, does not violate any Articles of Incorporation, Articles of Organization, By Laws, Operating Agreement, Partnership Agreement or other document governing the activity of either Buyer or Seller.
39. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit shall be returned, unless the offer is Signed by Seller, and a Copy of the Signed offer is personally received by Buyer, or by _____,
who is authorized to receive it by 5:00 PM on the third Day after this offer is signed by Buyer (OR, if checked ☐ by _____ (date), at _____ ☐ AM ☐ PM).
Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships.

Buyer  SAIED SAFABAKHSH
By _____                                          Date  05/15/2019
Print name  Saied Safabakhsh
Address _____ City _____ State _____ Zip _____
Telephone  (671) 687-6410   Fax _____ E-mail _____

Buyer _____
By _____                                          Date _____
Print name _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____
Notice Address, If Different _____
☐ Additional Signature Addendum attached (G.A.R. Form ASA).

Buyer's Initials ( _____ ) ( _____ )                Seller's Initials ( _____ ) ( _____ )
CPA REVISED 6/2013 (PAGE 8 OF 9)                     Reviewed by _____ Date _____

COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 8 OF 9)


Action Hotel

Property Address: _Chalan Senimario (Hotel Accion)_ Date: _May 15, 2019_
_Yona, GU 96915_

**40. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.
☐ (If checked) **SUBJECT TO ATTACHED COUNTER OFFER, DATED** _____

Seller _Owner of Record_
By _____ Date _____
Print name _____
Address _____ City _____ State ____ Zip _____
Telephone _____ Fax _____ E-mail _____

Seller _____
By _____ Date _____
Print name _____
Address _____ City _____ State ____ Zip _____
Telephone _____ Fax _____ E-mail _____
Notice Address, If Different _____
☐ Additional Signature Addendum attached (G.A.R. Form ASA).

( ____ / ____ ) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by Buyer or Buyer's
(Initials) authorized agent on (date) _____ at _____ ☐ AM ☐ PM. **A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent** whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2 above.
C. If specified in paragraph 3A(2), Agent who submitted offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker **(Selling Firm)** and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: **(i)** the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the property is offered for sale or a reciprocal MLS; or **(ii)** ☐ (if checked) the amount specified in a separate written agreement (G.A.R. Form CBC) between Listing Broker and Cooperating Broker.

Real Estate Broker (Selling Firm) _Alliance Realty, LLC_ Lic. # _CB605_
By _____ _Diedre Leon Guerrero_ Lic. # _RS-1797_ Date _05/15/2019_
Address _P.O. Box CK_ City _Hagatna_ State _GU_ Zip _96932_
Telephone _(671)864-8788_ Fax _____ E-mail _deejlg@gmail.com_

Real Estate Broker (Listing Firm) _RE/MAX Diamond Realty_ Lic. # _____
By _____ Lic. # _____ Date _____
Address _____ City _____ State _____ Zip _____
Telephone _____ Fax _____ E-mail _____

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer(s) numbered _____ and ☐ Other _____
_____, and agrees to act as Escrow Holder subject to paragraph 32 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions, if any.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____
Escrow Holder _____ Escrow # _____
By _____ Date _____
Address _____
Phone/Fax/E-mail _____
Escrow Holder is licensed by the Government of Guam ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # _____

**PRESENTATION OF OFFER:** ( _____ ) Listing Broker presented this offer to Seller on _____ (date).
Broker or Designee Initials

**REJECTION OF OFFER:** ( ____ ) ( ____ ) No counter offer is being made. This offer was rejected by Seller on
Seller's Initials _____ (date).

THIS FORM HAS BEEN APPROVED BY THE GUAM ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISIONS IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. Owned by and exclusively for the use of real estate broker/agent and appraiser members of the Guam Association of Realtors®

CPA REVISED 6/2013 (PAGE 9 OF 9) Reviewed by _____ Date _____
**COMMERCIAL PROPERTY PURCHASE AGREEMENT (CPA PAGE 9 OF 9)** Action Hotel.

Case 19-00010 Document 194 Filed 05/30/19 Page 12 of 15

**RECEIPT**

NOTES

DATE: 16 MAY 2019　　NO. 925464

RECEIVED FROM: DR. SAIED SAFABAKHSH

ADDRESS: ONE HUNDRED THOUSAND DOLLARS ——— $100,000.00

FOR: ESCROW 2019-0528

| ACCOUNT | | HOW PAID | |
|---|---|---|---|
| AMT. OF ACCOUNT | | CASH | |
| AMT. PAID | 100,000.00 | CHECK | 1529 |
| BALANCE DUE | | MONEY ORDER | |

BY: [signature]

©2001 REDIFORM 8L802

Security Title

---

SAIED SAFABAKHSH
633 GOV CARLOS CAMACHO RD STE 205
TAMUNING, GUAM 96913

1529
59-523/1214

Date: 5/15/19

Pay to the Order of: Security Title

$100,000

One Hundred Thousand ——— Dollars

**First Hawaiian Bank**
MAITE BRANCH
400 ROUTE 8
MONGMONG, GUAM 96913

PRIVATE BANKING

For: [illegible]

⑆121405238⑆ 1529  03⃩613720⑈

Seller's response to offer dated May 15, 2019 from Saied Safabakhsh for subject lots:

**Lot 90-2-R1-RNEW-3** – 5,463 square meters
(wetlands as shown on document #10839)
**Lot 90-2-R1-RNEW-R3** -67,338 square meters
**Lot 90-2-R1-RNEW-2-R/W** – easement
**Lot 90-2-R1-RNEW-1-R/W** – easement

1. In reference to item 1.D. Close of Escrow, Buyer to close escrow within 5 days from sellers notification and court approval to proceed to close.

2. Item 3A. $100,000 earnest money deposit will be non-refundable if the buyer is the successful purchaser, but is unable to close the transaction. _under the existing offer only,_   SS

3. As per item 3J. Buyer to provide proof of sufficient funds to close this transaction within 5 days from acknowledgment of this response.

4. Item 4D(1). Other costs shall be paid by buyer only.
   Item 4D(2). OA document fee is not applicable.

5. Item 5A. Seller-Occupied or vacant units; Possession shall be delivered to buyer at 5PM on the date of close of escrow and recordation of appropriate deed.

6. Item 14 Buyers investigation of property and matters affecting property: All items in Section 14.A. shall be approved or waived in writing within 5 days from acknowledgement of this response.

7. In reference to Item 15.D. Buyer to be aware that this sale is going through the bankruptcy court. Bankruptcy court requires full disclosure to all parties. By signing this acknowledgment, buyer agrees that condition 15.D. is no longer a condition of this offer., _except that it continues to be a condition with respect to the public at large._

SS

~~8. Buyer understands that the Bankruptcy Court will require an auction of the property, with minimum overbids, to determine the highest and best bid, since more than one offer has been made on the property. Buyer agrees to participate in the process as opening bidder, which Seller shall request the Bankruptcy Court conduct the auction in the most expeditious manner possible.~~ <u>Buyer's offer is a firm and final offer.</u>

Acknowledgement:

_____
Buyer Signature

05/25/19
Date

_____
Seller Signature

5/22/19
Date