ARRIOLA, COWAN AND ARRIOLA
MARK E. COWAN (Bar No. 73002)
ANITA P. ARRIOLA (Bar No. 89001)
259 Martyr St., Ste. 201
Hagåtña, GU 96910-5200
Telephone: (671) 477-9730
Facsimile: (671) 477-9734

MACDONALD | FERNANDEZ LLP
IAIN A. MACDONALD *(Admitted Pro Hac Vice)*
RENO F.R. FERNANDEZ III *(Admitted Pro Hac Vice)*
MATTHEW J. OLSON *(Admitted Pro Hac Vice)*
221 Sansome Street, Third Floor
San Francisco, CA 94104-2331
Telephone: (415) 362-0449
Facsimile: (415) 394-5544

Attorneys for Creditor,
BANK OF GUAM

# THE DISTRICT COURT OF GUAM

In re

ARCHBISHOP OF AGAÑA, a Corporation Sole,

Debtor.

Bankruptcy Case No. 19-00010
Chapter 11

**ORDER APPROVING AMENDED STIPULATION FOR USE OF CASH COLLATERAL**

This matter came before the Court upon the *Amended Stipulation for Use of Cash Collateral* [ECF No. 172] (the "Stipulation") filed by the Archbishop of Agaña, a Corporation Sole, also known as the Roman Catholic Archdiocese of Agaña, debtor and debtor in possession herein (the "Debtor in Possession") and Bank of Guam (the "Bank"). Pursuant to the Stipulation, the Debtor in Possession seeks: (i) entry of a final order authorizing Debtor in Possession's (including the DIP Constituencies, as that term is defined by the Stipulation) use of collateral as set forth in the Stipulation; and (ii) entry of a final order providing the Bank with adequate protection with respect to outstanding loans issued by the Bank for the benefit of the Debtor and the DIP Constituencies which are secured against accounts through rights of setoff. Unless otherwise defined herein, capitalized terms in this Order shall be given the same meaning ascribed to such terms in the Stipulation.

**BASED UPON THE RECORD BEFORE THE COURT, THE COURT FINDS AND CONCLUDES AS FOLLOWS:**

A. This case was commenced by the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code on January 16, 2019 ("Petition Date"). No Trustee has been appointed and the debtor is in possession of its estate.

B. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(D). The statutory bases for the relief requested in the Motion are Bankruptcy Code §§ 105, 361 and 364. Fed. R. Bankr. P. 4001(c) governs the Motion.

C. Since the Petition Date, the Debtor has been operating as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

D. The Stipulation was duly and properly noticed in accordance with applicable procedural rules.

**BASED UPON THE RECORD BEFORE THE COURT, THE COURT FINDS AND CONCLUDES AS FOLLOWS:**

1. The Stipulation is made an Order of this Court, retroactive to January 16, 2019, and superseding the Court's prior orders on interim approval [ECF Nos. 56 and 63].

2. <u>Continued Operations</u>. Debtor in Possession (including the DIP Constituencies) may operate through June 30, 2019, in accordance with the Stipulation and Budget attached as Exhibit "C" to the Stipulation, and may spend up to the aggregate sum of $1,175,000 during each of January through April 2019 and $850,000 during May and June 2019. After the Bank approves a budget for subsequent periods and such budget is filed with the Court, the Debtor in Possession may operate in accordance with that budget, without further Court approval. Upon prior written notice to Bank, Debtor in Possession may exceed the budgeted amount for any line item expense by up to 5 percent so long as the total expenses in any calendar month do not exceed 105 percent of the total budgeted expenses for such month. With Bank's written agreement, Debtor in Possession may exceed the budgeted monthly amount, either on a line-item by line-item or aggregate basis, without Court approval. Notwithstanding the foregoing, the Stipulation does not waive or release any security interest the Bank holds in the Cash Collateral.

3. <u>Adequate Protection Payments</u>. Debtor in Possession or one or more of the DIP Constituencies, as the case may be, shall make an adequate protection payment to Bank in an amount equal to the combined ongoing debt service amount for the 11 outstanding loans (the total sum of $88,801.11 per month, including an interest-only payment on the Cathedral Basilica loan) on or before the due dates as scheduled in the Promissory Notes, and then again each month thereafter. In each case payments shall be made so as to be actually received by Bank by the applicable dates set forth in the preceding sentence. Payments shall be applied to loan principal (the "<u>Post-Petition Principal Reduction</u>") and reduce the Cash Collateral Amount on a dollar for dollar basis. Payments shall continue notwithstanding maturity of the loans until June 30, 2019, or any extended terms as set forth in paragraph 1 of the Stipulation.

4. <u>Minimum Deposits</u>. Debtor in Possession and the DIP Constituencies shall maintain, in the aggregate, deposits equal to 90 percent of the Cash Collateral Amount less the cumulative amount of Post-Petition Principal Reduction (the "<u>Minimum Deposit Amount</u>") at all times. With Bank's written agreement, Debtor in Possession or the DIP Constituencies may reduce the amount on deposit below the Minimum Deposit Amount without Court approval. Notwithstanding the foregoing, the Stipulation does not waive or release any security interest that Bank may hold in the Cash Collateral.

5. <u>Financial Reporting</u>.

a. No later than February 15, 2019, Debtor in Possession shall provide Bank a written report that sets forth, with respect to each expense category in the Budget: (i) the actual Cash Debtor in Possession spent from the Petition Date through and including January 31, 2019; (ii) a comparison of actual amounts spent with budgeted amounts; and (iii) amounts payable but not yet paid.

b. No later than March 15, 2019, and then the 15th day of each month thereafter, Debtor in Possession shall provide Bank a written report setting forth the information described in paragraph 5.a. for the preceding calendar month.

6. <u>Rights to Security Interest</u>. Subject to the bolded language in paragraph 10 of the Stipulation, Debtor in Possession affirms Bank's contractual right of setoff in the Cash Collateral is

valid, and that the Bank's lien in the aforementioned 2016 Hyundai Tucson is valid, perfected, and unavoidable.

7. <u>Replacement Setoff Right</u>. Bank is granted a replacement right of setoff in and to all new cash deposits of Debtor in Possession at the Bank or elsewhere to which Bank's setoff rights would have attached but for the filing of Debtor in Possession's bankruptcy petition to the extent Debtor in Possession spends Cash or the value of Bank's collateral otherwise declines on or after the Petition Date (the "<u>Replacement Setoff Right</u>"), but in no case shall the combined amount of the Replacement Setoff Right and the Cash on deposit exceed the Cash Collateral Amount less the cumulative amount of Post-Petition Principal Reduction. The priority of the Replacement Setoff Right granted to Bank shall be in the same priority, nature, and extent as the Bank's right of set off that existed on the Petition Date. The Replacement Setoff Right granted shall be perfected by operation of law upon the Court's entry of this Order. Bank shall not be required to file or record any financing statement or take any other action to perfect the Replacement Setoff Right granted hereunder. To the full extent that the Cash Collateral is deemed to be property of the Debtor in Possession's estate, the Replacement Setoff Right shall be enforceable against and binding upon the Debtor in Possession, its estate, and any successor thereto, including, without limitation, any trustee or other estate representative appointed in the case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of this case, or in any other proceeding superseding or related to any of the foregoing.

8. <u>Administrative Matters</u>. The Debtor in Possession will execute new signature cards for each deposit account at the Bank to include as an authorized signatory (a) the incumbent Archbishop of Agaña as the responsible individual for the Debtor in Possession (the "<u>Responsible Individual</u>") and (b) such other and subordinate officials as the Debtor in Possession deems necessary to authorize withdrawals from each particular deposit account. No deposit account shall be opened or closed without the express written authorization of the Responsible Individual.

9. <u>Termination</u>. The Stipulation shall terminate immediately upon the earlier of (i) Debtor in Possession's failure to comply with the terms of the Stipulation, including without limitation Debtor in Possession's failure (a) to operate in accordance with the Budget as set forth in paragraph 1 of the Stipulation, (b) to make either payment described in paragraph 2 of the Stipulation by the deadlines

set forth therein, (c) the failure of the Debtor in Possession to maintain the Minimum Deposit Amount on deposit at the Bank described in paragraph 3 of the Stipulation, or (d) the failure of the Debtor in Possession to provide the reports described in paragraph 4 of the Stipulation by the deadlines set forth therein; (ii) appointment of a chapter 11 trustee in this bankruptcy case or conversion of this bankruptcy case to a case under chapter 7 of the Bankruptcy Code; or (iii) 14 days after a notice of termination is filed by either the Debtor in Possession or the Bank.

10. <u>Rights Reserved</u>.  The Stipulation shall not affect or prejudice the rights or remedies of any Party other than as specifically provided herein, which rights include but are not necessarily limited to (i) Bank's right to file a motion for relief from the automatic stay imposed by the filing of Debtor in Possession's bankruptcy petition or to file or support a motion for appointment of a chapter 11 trustee or conversion of this case to a case under chapter 7 of the Bankruptcy Code; and (ii) Debtor in Possession's right to oppose any such motion.  Nothing in the Stipulation constitutes an admission by Bank that Bank is adequately protected against a decline in the value of Bank's collateral. Notwithstanding anything to the contrary in this paragraph or the Stipulation, Debtor in Possession shall not seek Court authorization to use Cash or Cash Collateral in Bank of Guam accounts other than in accordance with the Stipulation during the term of the Stipulation.  Moreover, nothing in the Stipulation nor any order entered hereon shall bind any party to the bankruptcy proceeding, including the Official Committee of Unsecured Creditors, with respect to the characterization of any asset as property of the estate or not property of the estate, or the characterization of any claim as a claim against the Debtor in Possession (whether directly or as a fiduciary for another).  Any disputes regarding these issues will be resolved by the relevant parties in interest in another contested matter, an adversary proceeding, or a proceeding before another court of competent jurisdiction.  **In the event that any portion of the Cash Collateral is ultimately determined by such court to not be property of the Debtor in Possession's bankruptcy estate (the "<u>Excluded Cash Collateral</u>"), the Stipulation and any orders thereon shall be void *ab initio* and ineffectual with respect to the Excluded Cash Collateral, and any replacement setoff rights, liens, other rights, or claims created by the Stipulation, or created by any order thereon, against the Excluded Cash Collateral or property of the estate traceable to the Excluded Cash Collateral shall be**

**unenforceable and of no further force or effect, but the Bank's rights against the Excluded Cash Collateral under applicable nonbankruptcy law shall be not be affected.**

11. All the other terms and conditions of the Stipulation are **APPROVED** and made an Order of this Court, retroactive to January 16, 2019.

**SO ORDERED.**

/s/ Frances M. Tydingco-Gatewood
　　Chief Judge
**Dated: Jun 20, 2019**