**G. PATRICK CIVILLE**
**CIVILLE & TANG, PLLC**
330 HERNAN CORTEZ AVENUE, STE 200
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868/69
FACSIMILE: (671) 477-2511
EMAIL: pciville@civilletang.com

**JESSICA C. LAURIA**
**WHITE & CASE LLP**
1221 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10020
TELEPHONE: (212) 819-8200
FACSIMILE: (212) 354-8113
EMAIL: jessica.lauria@whitecase.com

**MATTHEW E. LINDER**
**ERIN R. ROSENBERG**
111 SOUTH WACKER DRIVE, SUITE 5100
CHICAGO, ILLINOIS 60606-4302
TELEPHONE: (312) 881-5400
FACSIMILE: (312) 881-5450
EMAIL: matthew.linder@whitecase.com
           erin.rosenberg@whitecase.com

*Counsel for Boy Scouts of America*

**IN THE DISTRICT COURT OF GUAM**
**TERRITORY OF GUAM - BANKRUPTCY DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Bankruptcy |
| ARCHBISHOP OF AGAÑA, | Case No. 19-00010 |
| a Corporation Sole, | **THE BOY SCOUTS OF AMERICA'S OBJECTION AND RESERVATION OF RIGHTS TO DEBTOR'S MOTION PURSUANT TO SECTIONS 105(a) and 363(f) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 FOR AN ORDER (1) APPROVING SETTLEMENT AGREEMENT AMONG THE ARCHDIOCESE, THE AOA ENTITIES, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND AIG INSURERS ENTITIES, (2) APPROVING THE ARCHDIOCESE'S SALE OF THE POLICIES ISSUED TO THE DEBTOR BACK TO AIG INSURERS ENTITIES FREE AND CLEAR OF CLAIMS AND INTERESTS, AND (3) ENJOINING ASSERTION OF CLAIMS AGAINST AIG INSURERS ENTITIES [DOCKET NO. 939]** |
| Debtor. | |
| | **Hr'g Date: September 30, 2022 at 8:30 a.m. (ChST)** |

**TABLE OF CONTENTS**

I. BACKGROUND ........................................................................................................... 1

II. OBJECTION ................................................................................................................. 5

    A. The Proposed Order Must be Revised to Clarify the Terms of the AIG Draft Settlement. ................................................................................................. 5

    B. Bankruptcy Rule 9019 Does Not Provide Authority to Impair the BSA's Rights Without Consent. ........................................................................................ 7

    C. Sections 105(a) and 363(b) and (f) of the Bankruptcy Code Do Not Provide Authority to Approve the AIG Draft Settlement as It Relates to the BSA Insurance Policies. ................................................................................ 11

    D. The Debtor has Failed to Meet Its Burden to Establish that the Settlement is Fair and Reasonable ................................................................................... 12

III. RESERVATION OF RIGHTS .................................................................................. 15

IV. CONCLUSION........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re Oakhurst Lodge, Inc.*,
 582 B.R. 784 (Bankr. E.D. Cal. 2018) ...................................................................................8

*In re OptInRealBig.com, LLC*,
 345 B.R. 277 (Bankr. D. Colo. 2006) ....................................................................................8

*In re Pac. Atl. Trading Co.*,
 33 F.3d 1064 (9th Cir. 1994) .................................................................................................8

*In re Smart World Techs., LLC*,
 423 F.3d 166 (2d Cir. 2005) ..................................................................................................8

*In re Wolfberg*,
 255 B.R. 879 (B.A.P. 9th Cir. 2000), *aff'd*, 37 F. App'x 891 (9th Cir. 2002) ..........................8

*Northview Motors, Inc. v. Chrysler Motors Corp.*,
 186 F.3d 346 (3d Cir. 1999) ..................................................................................................8

*In re Actrade Fin. Techs., Ltd.*,
 Case No. 02-16212 (ALG), 2009 Bankr. LEXIS 2435 (Bankr. S.D.N.Y. Sept. 3, 2009) ..........9

*In re Bondanelli*,
 No. 2:14-BK-27656-WB, 2020 WL 1304140 (B.A.P. 9th Cir. Mar. 18, 2020) .......................13

*In re Fleming Packaging Corp.*,
 2007 Bankr. LEXIS 4234 (Bankr. C.D. Ill. Dec. 20, 2007) .....................................................13

*In re Mickey Thompson Ent. Grp., Inc.*,
 292 B.R. 415 (B.A.P. 9th Cir. 2003) .....................................................................................13

*LaSalle Nat'l Bank v. Holland (In re American Reserve Corp.)*,
 841 F.2d 159 (7th Cir. 1987) .................................................................................................13

*Myers v. Martin (In re Martin)*,
 91 F.3d 389 (3d Cir. 1996) ....................................................................................................13

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
 390 U.S. 419 (1968) ...............................................................................................................13

*In re HyLoft, Inc.*,
 451 B.R. 104 .........................................................................................................................14

**FEDERAL STATUTES**

11 U.S.C. § 105(a) ........................................................................................................7, 11, 12

11 U.S.C. § 363(b) ........................................................................................................7, 10, 11, 12

11 U.S.C. § 363(f) ....................................................................................................4, 7, 10, 11, 12

28 U.S.C. § 2075 .......................................................................................................................7

11 U.S.C. § 1129(a)(3) ...............................................................................................................3

11 U.S.C. § 1129(a)(7) ...............................................................................................................3

Rules Enabling Act ....................................................................................................................9

**FEDERAL RULES**

Fed. R. Bankr. P. 9019 ....................................................................................................... passim

Local Rule 6004-1(2) ...............................................................................................................14

The Boy Scouts of America (the "**BSA**"), by and through its undersigned counsel, submits the following Objection (the "**Objection**") to the *Motion Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 9019 for an Order (1) Approving Settlement Agreement Among the Archdiocese, the AOA Entities, the Official Committee of Unsecured Creditors and AIG Insurers Entities, (2) Approving the Archdiocese's Sale of the Policies Issued to the Debtor back to AIG Insurers Entities Free and Clear of Claims and Interests, and (3) Enjoining Assertion of Claims Against AIG Insurers Entities* [Docket No. 939] (the "**Motion**") and the *Debtor's Memorandum of Law in Support of Motion Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code and Bankruptcy Rule 9019 for an Order (1) Approving Settlement Agreement Among the Archdiocese, the AOA Entities, the Official Committee of Unsecured Creditors, and AIG Insurer Entities, (2) Approving the Archdiocese's Sale of the Policies Issued to the Debtor Back to AIG Insurer Entities Free and Clear of Claims and Interests, and (3) Enjoining Assertion of Claims Against AIG Insurer Entities* [Docket No. 939-1] (the "**Memorandum**").

## I.   BACKGROUND[1]

Substantial background information regarding the BSA's bankruptcy proceeding (the "**BSA Bankruptcy**"), as is relevant to this Chapter 11 Case, is set forth in the BSA's prior filings with this Court, including the *Boy Scouts of America's Objection and Reservation of Rights to Confirmation of the Third Amended Joint Chapter 11 Plan of Reorganization for the Archbishop of Agaña* [Docket No. 948] ("**BSA's Plan Objection**"). More recently, on July 29, 2022, the United States Bankruptcy Court for the District of Delaware (the "**Delaware Court**") issued its *Opinion* [BSA Bankr. Docket No. 10136] (the "**Opinion**") in the BSA Bankruptcy in connection with the *Third Modified Fifth Amended Chapter 11 Plan of Reorganization (with Technical Modifications)*

---

[1] Certain of the facts in this section are recounted herein from the Debtors' 9019 Motion and are not an admission of the truth, accuracy, or completeness of such facts and the BSA reserves all of its rights with respect thereto should such representations of the facts prove untrue, inaccurate, or incomplete.

- 1 -

*for Boy Scouts of America and Delaware BSA, LLC* [BSA Bankr. Docket No. 9696], as modified [BSA Bankr. Docket No. 10296] (the "**BSA Plan**"). On September 8, 2022, the Delaware Court confirmed the BSA Plan, entering the *Supplemental Findings of Fact and Conclusions of Law and Order Confirming the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC* [BSA Bankr. Docket No. 10316] (the "**BSA Confirmation Order**").[2] The Opinion and BSA Confirmation Order address various issues related to the BSA Plan, including objections from the Debtor, the Official Committee of Unsecured Creditors (the "**Committee**," and together with the Debtor, the "**Plan Proponents**"), and the Lujan claimants. Among other things, a central component of the Opinion and the BSA Confirmation Order and Plan is the treatment of the insurance policies issued to the BSA and its local councils ("**Local Councils**"), (the "**BSA Insurance Policies**"), including the approval of the settlements and sale of certain of the BSA Insurance Policies to Hartford, Century and Chubb Companies, Zurich, and Clarendon (the "**BSA Settling Insurers**") in exchange for settlement amounts transferred to a trust established in the BSA Bankruptcy (the "**BSA Trust**") for the benefit of all abuse claimants. In addition, the BSA Confirmation Order approves the transfer and assignment of interests in BSA Insurance Policies issued by non-settling insurers to the BSA the Local Councils and certain Chartered Organizations (as defined in the BSA Plan and modified by the Opinion and BSA Confirmation Order). Among those interests being transferred to the BSA Trust are interests in policies issued by the AIG Insurers to the BSA and the Local Councils, which the Plan Proponents and AIG now seek to partially settle without the BSA's consent, pursuant to the draft settlement agreement attached to the Motion (the "**AIG Draft Settlement**").

On August 17, 2022, the Archbishop of Agaña (the "**Debtor**" or "**AOA**") moved the Court for the entry of an order: (1) approving a settlement set forth in a draft settlement agreement among

---

[2] A copy of the BSA Confirmation Order is attached as Exhibit A to the Declaration of P. Civille filed herewith ("**Civille Decl.**").

- 2 -

the Archdiocese, the AOA Entities, the Committee, and the AIG Insurers Entities (the "**AIG Insurers**"); (2) authorizing the Archdiocese to sell the policies issued directly to the Debtor (the "**Debtor AIG Policies**") to the AIG Insurers, free and clear of claims and interests of any other person or entity; (3) enjoining all claims against the AIG Insurers under the Policies relating to coverage provided to the AOA and the AOA Entities; (4) approving the manner and form of notice of the Motion and the proposed injunction, and (5) granting such other relief as is just and proper. Certain of the policies that are subject to the AIG Draft Settlement (the "**AIG Insurers Policies**") were issued directly to the BSA or its Local Councils for their benefit and may, or may not, provide coverage to the AOA. Importantly, the BSA is not party to, and does not support, the AIG Draft Settlement.

Among other provisions, the AIG Draft Settlement contemplates that the AIG Insurers will be deemed "Settling Insurers" under the *Joint Chapter 11 Plan of Reorganization for the Archbishop of Agaña* [Docket No. 920] (the "**Plan**") and shall be afforded all protections designed thereto, including being granted all associated releases, injunctions (including the Supplemental Settling Insurer Injunction set forth in Section 7.10 of the Plan), and protections from any "Settled Claims." *See* AIG Draft Settlement § 6. The BSA has objected to confirmation of the Plan on a number of grounds [Docket No. 920] (the "**BSA Confirmation Objection**").

Separate and apart from the AIG Draft Settlement among the Archdiocese, the AOA Entities, the Committee, and the AIG Insurers, the Motion and proposed order attached thereto (the "**Proposed Order**") seek authority to sell certain AIG Insurers Policies pursuant to 11 U.S.C. § 363(f), but "only those policies that were <u>issued to the Debtor</u>." *See* Proposed Order ¶ 2 (emphasis added). It appears that nothing in the Motion or Proposed Order purports to sell the BSA Insurance Policies, which were issued to the BSA, Local Councils, or any Chartered Organization of the BSA (excluding, to the extent applicable, the Debtor and/or the AOA Entities). This, however, is not

- 3 -

entirely clear in the AIG Draft Settlement and must be clarified in the order before the AIG Draft Settlement can be approved.

Moreover, the BSA takes little comfort in this—as the Debtor admits, the AIG Draft Settlement is not finalized and remains only an agreement in principle. Mot. at 3 n.1 (noting that the settlement reflects the "agreement reached in principle . . .subject to ongoing review, revisions in all respects, and final approval from the AIG Insurers' management."). As of the date of this Objection, the Plan Proponents and the AIG Insurers have not filed a final or even an execution version of the settlement agreement, the terms of which may materially deviate from the proposal set forth in the Motion. The Plan Proponents have also not indicated which issues remain open, when such issues may be resolved, and when they intend to file a final settlement to provide parties sufficient time to review.

The parties' discovery responses provided to date give no further clarity. While National Union admits that "the National Union Settlement, and $18,000,000 contribution described in Section 7.11 of the Plan, does not and will not authorize or permit the exhaustion or erosion (either now or in the future) of any aggregate or per-occurrence limits on any insurance policies issued to the BSA and/or its Local Councils" (Civille Decl. Exhibit B, RFA No. 2), the Committee states that "after reasonable inquiry the Committee is without sufficient knowledge or information and to respond to [that same request for admission] and so denies same" (Civille Decl. Exhibit C, RFA No. 2). The Debtor similarly denies that same request for admission (Civille Decl. Exhibit D, RFA No. 2). Further, the Debtor states in its interrogatory responses that "the Proposed Settlement does not expressly address exhaustion or erosion of any aggregate or per-occurrence limits of any aggregate or per-occurrence limits on any insurance policies issued to the BSA and/or its Local Councils. Nor does the Debtor otherwise have information relating to the erosion or exhaustion of per occurrence or aggregate limits on such policies." (Civille Decl. Exhibit G, Interrogatory No.

- 4 -

2).  This causes ambiguity at best and, at worst, concern over whether the Plan Proponents understand the fundamental working mechanisms of the AIG Draft Settlement.

Accordingly, the BSA is not able to fairly evaluate or raise proper objections to the actual settlement terms between the Plan Proponents and the AIG Insurers and has no knowledge of how the terms of an eventual settlement may deviate from the AIG Draft Settlement and therefore both objects on the grounds that no final settlement has been filed with the Court and reserves all rights to raise further objections if and when a final settlement agreement is made available.

## II. OBJECTION

### A. The Proposed Order Must be Revised to Clarify the Terms of the AIG Draft Settlement.

As described more fully below, the BSA objects to the Motion to the extent the relief sought impermissibly impairs substantive rights that belong to the BSA and/or will be transferred to the BSA Trust pursuant to the BSA Confirmation Order.  Additionally, even if the Plan Proponents did not intend to impair substantive rights belonging to the BSA or the BSA Trust, vague or ambiguously drafted provisions in the Proposed Order and AIG Draft Settlement create material risks to the BSA and the BSA Trust that can only be addressed by clear and unambiguous protective language in this Court's order.

As discussed below, the BSA objects to approval of the Motion on multiple grounds, not the least of which is that the Debtor has not met its burden of proof that this settlement satisfies the applicable standard.  To the extent the Debtor is able to remedy these flaws and the Court is inclined to grant the Motion, the AIG Draft Settlement and order related thereto must be clarified to avoid confusion, improperly impact the BSA's property, and/or collaterally attack the BSA Confirmation Order.  To this end, the BSA has prepared a revised proposed order attached hereto as **Exhibit 1** (the **"Revised Order"**) (shown along with a redline to the proposed order attached to the Motion), which appropriately preserves the BSA's and the BSA Trust's rights against the AIG Insurers.  The

- 5 -

BSA respectfully requests that the Court incorporate these provisions into any order approving the AIG Draft Settlement. If the representations of the Plan Proponents and the AIG Insurers are accurate, these revisions should not be controversial. Specifically, the BSA's proposed Revised Order provides:

i. Clarification that nothing in the AIG Draft Settlement, related releases, Plan, Plan confirmation order, or Revised Order shall be construed to release, channel, enjoin, or otherwise impair claims against the AIG Insurers belonging to the BSA, Local Councils, any Chartered Organization of the BSA (other than the Debtor and/or the AOA Entities) or the BSA Trust.

Clarification that, to the extent set forth in a final non-appealable Confirmation Order (as this cannot be done in the context of a settlement agreement only), although the BSA Trust may not assert claims against the AIG Insurers for the Debtor's and/or the AOA Entities' portion of liability, nothing impairs the BSA's property or rights or collaterally attacks the BSA Confirmation Order because no party may seek a Prohibited Recovery against the BSA, Local Councils, any Chartered Organization of the BSA (other than the Debtor and/or the AOA Entities), or the BSA Trust on account of the portion of liability attributable to the Debtor and/or the AOA Entities and covered, or allegedly covered, by an AIG Insurers Policy.

- This provision is essential to clarify that nothing in the AIG Draft Settlement can be construed to impair the BSA's direct claims against the AIG Insurers and that no party will be permitted to bring claims against the BSA or the BSA Trust for claims that are channeled pursuant to the AIG Draft Settlement and Plan.

ii. Clarification that nothing in the Revised Order constitutes a determination of the Debtor's and/or the AOA Entities' right to coverage under, or interest in, the AIG Insurers Policies issued to the BSA or Local Councils.

- This provision makes clear that the Debtor's interest in the AIG Insurers Policies issued to the BSA or Local Councils, if any, is not before the court and nothing in the Revised Order can be construed to make a final, binding determination of such interest, if any, in those insurance policies.

iii. Clarification that no portion of the Settlement Amount shall be allocated to the AIG Insurers Policies issued to the BSA or Local Councils, nor will anything in the AIG Draft Settlement, related releases, or the Revised Order permit the exhaustion or erosion (either now or in the future) of any aggregate, per-person or per-occurrence limits under the AIG Insurers Policies issued to the BSA or Local Councils.

- Although AIG has represented that this an accurate description of the settlement, the AIG Draft Settlement and Proposed Order is not sufficiently clear on this point. Therefore, this provision is necessary to preserve the BSA's (or the BSA Trust's) right to its full insurance coverage and guarantee that the AIG Insurers will not later impair the BSA's (or the BSA Trust's) coverage by exhausting coverage limits in connection with the AIG Draft Settlement.

iv. Clarification that, in the event of a conflict between the terms of the AIG Draft Settlement and the Revised Order, the terms of the Revised Order shall control.

- This provision ensures that subsequent changes to the AIG Draft Settlement or ambiguous provisions therein will not be construed to impair the BSA's rights as preserved in the Revised Order.

v. Clarification that the Revised Order does not interfere with, or otherwise limit, the Delaware Court's jurisdiction or authority.

- This provision is necessary to respect the Delaware Court's independent jurisdiction and prohibit collateral attacks on jurisdictional and other findings in the BSA Confirmation Order.

vi. Certain necessary conforming revisions.

The BSA asserts that each of the modifications proposed to the Revised Order, as set forth on Exhibit A, is critical to describe the effect of the AIG Draft Settlement on the BSA Insurance Policies issued by AIG Insurers, necessary to preserve the BSA's interests in the BSA Insurance Policies issued by AIG Insurers, and to the extent the Court finds that all requirements are met to approve the AIG Draft Settlement, important in resolving the outstanding objections from the BSA.

B. <u>Bankruptcy Rule 9019 Does Not Provide Authority to Impair the BSA's Rights Without Consent.</u>

A threshold issue presented by the Motion and the AIG Draft Settlement is the extent to which this Court can grant the relief sought by the Plan Proponents pursuant to Bankruptcy Rule 9019. In the Motion and Memorandum, the Plan Proponents cite Bankruptcy Rule 9019 and sections 105(a), 363(b) and (f) of the Bankruptcy Code as sources of authority to approve the AIG Draft Settlement. First and foremost, Bankruptcy Rule 9019 provides, in pertinent part:

> Compromise. On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

Accordingly, it appears that the procedural path chosen by the Debtor for the relief being sought is a compromise and settlement under Bankruptcy Rule 9019. Bankruptcy Rule 9019, however, is not an independent source of power for the court to abridge or modify the substantive

- 7 -

rights of parties without their consent.  Notably, the Bankruptcy Rules were promulgated pursuant to 28 U.S.C. § 2075 (the "**Rules Enabling Act**"), which provides: "[t]he Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11" and that "[s]uch rules shall not abridge, enlarge, or modify any substantive right."  Thus, while Bankruptcy Rule 9019 provides a procedural framework for obtaining court approval for a compromise or settlement in a bankruptcy case, Bankruptcy Rule 9019 cannot provide an independent basis for the court to abridge or modify the substantive rights of non-debtor parties without their consent.  *See In re Smart World Techs., LLC*, 423 F.3d 166, 181, n.23 (2d Cir. 2005) (noting that "[r]ules [established by the Supreme Court, such as the rules governing practice and procedure under Title 11,] shall not abridge, enlarge, or modify any substantive right."); *Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 351, n.4 (3d Cir. 1999) (noting that "as a matter of law, Bankruptcy Rule 9019(a), a rule of procedure, cannot, by itself, create a substantive requirement of judicial approval of the 'proposed settlement' but ultimately concluding that a specific provision of the Bankruptcy Code was the 'substantive provision requiring court approval'"); *In re Pac. Atl. Trading Co.*, 33 F.3d 1064, 1066 (9th Cir. 1994) (recognizing that "Title 28 U.S.C. § 2075, which implements the Bankruptcy Rules, provides that '[s]uch rules shall not abridge, enlarge or modify any substantive right'"); *In re Oakhurst Lodge, Inc.*, 582 B.R. 784, 797 (Bankr. E.D. Cal. 2018) (explaining that rules of procedure such as "Rule 9019 . . . cannot override a substantive right provided for by the Bankruptcy Code when they conflict."); *In re Wolfberg,* 255 B.R. 879, 883 (B.A.P. 9th Cir. 2000), *aff'd*, 37 F. App'x 891 (9th Cir. 2002) (recognizing that Congress has specifically provided that the Bankruptcy Rules "shall not abridge, enlarge, or modify any substantive right").

  As a result, Bankruptcy Rule 9019 provides the procedure for a debtor and settling party to do so on a proper showing, but does not provide substantive rights to a debtor—including compromising the rights of non-settling parties.  *See In re OptInRealBig.com, LLC*, 345 B.R. 277,

- 8 -

291 (Bankr. D. Colo. 2006) ("The purpose and effect of seeking court approval of a compromise under Rule 9019 is to *bind the bankruptcy estate* to the terms of any bargain struck by a trustee or debtor-in-possession that affects the bankruptcy estate." (emphasis added)); *In re Actrade Fin. Techs., Ltd.*, Case No. 02-16212 (ALG), 2009 Bankr. LEXIS 2435, at *9 (Bankr. S.D.N.Y. Sept. 3, 2009) (holding that court-approved settlement between a chapter 7 trustee and a debtor was not binding on sureties who were not parties to the settlement).

The typical settlement under Bankruptcy Rule 9019 does not run afoul of the Rules Enabling Act because the settlement is limited to the interests of the debtor and the settling party, both of whom are consenting and are properly before the Court. An objector to a proposed settlement is often a creditor of the debtor who opposes the settlement as not being in the best interests of the debtor's estate because, among other things, it does not provide enough value on account of compromised claims.

However, the AIG Draft Settlement is entirely different. The BSA is asserting its objection to the proposed settlement on two grounds: (a) there has been no evidence submitted demonstrating that the AIG Draft Settlement is in the best interest of the Debtor's estate, and (b) the rights and interests of the BSA, a party in interest, may be impermissibly, non-consensually impaired under the terms of the AIG Draft Settlement. Indeed, the AIG Draft Settlement purports to reach and settle the very rights, claims, and interests *of the BSA* by improperly modifying and abridging those rights, claims, and interests without the BSA's consent and in violation of applicable law.

If approved in its current form, the AIG Draft Settlement and related relief could non-consensually modify and affect rights and claims belonging to the BSA (which will be transferred to the BSA Trust) against the AIG Insurers. The Proposed Order approves a settlement agreement that neither the BSA nor this Court has seen in final form (Proposed Order ¶ 1) and, acknowledging that the final settlement agreement may incorporate provisions not before the Court, provides that, "[i]n the event of a conflict between the terms of the Settlement Agreement and this Order, the

- 9 -

terms of the Settlement Agreement shall control." *See* Proposed Order ¶ 6 (emphasis added). Accordingly, the substantive rights of the BSA (and the BSA Trust) will be controlled in a potentially materially adverse manner by an agreement to which the BSA is not a party, does not yet exist, and may contain terms not yet drafted or filed that will supersede this Court's order.

Aside from these due process issues presented by the manner in which the AIG Draft Settlement and Proposed Order have been presented to the Court and to parties in interest, the AIG Draft Settlement, in its current form, contains numerous provisions that could create substantive rights for the AIG Insurers or eliminate substantive rights belonging to the BSA and Local Councils without their consent. For example, while it appears as if the AIG Insurers can only allocate the Settlement Amount to the AIG Insurers Policies issued directly to the Debtor and sold pursuant to section 363 of the Bankruptcy Code, the relevant terms remain unnecessarily ambiguous in the AIG Draft Settlement. *See* AIG Draft Settlement § 4(a). The Plan Proponents must clarify and confirm that nothing in the AIG Draft Settlement, the Proposed Order, the Plan, or any other related agreements or orders will permit the depletion of aggregate, per-person, or per-occurrence limits under AIG Insurer Policies issued to the BSA or Local Councils. Any unilateral right to deplete the BSA's policy limits created by the AIG Draft Settlement would violate the automatic stay and improperly take property of the BSA's estate without compensation, adequate protection, or due process, all without oversight or objection, and is wholly inconsistent with the BSA's existing rights and interests in the BSA Insurance Policies issued by the AIG Insurers.

The AIG Draft Settlement also designates the AIG Insurers as settling insurers under the Plan ("**Settling Insurers**") and entitles them to releases, injunctions, and protections (AIG Draft Settlement § 6), and releases claims against the AIG Insurers including claims belonging to "all other persons or entities entitled to assert rights to coverage under any of the AIG Insurers Policies related to Tort Claims or Unknown Tort Claims" (AIG Draft Settlement § 10). While the Plan Proponents and the AIG Insurers may agree to some of these provisions, and agree to seek certain

- 10 -

findings in connection with confirmation of the Plan, Bankruptcy Rule 9019 does not authorize the Plan Proponents to create new substantive rights for the benefit of the AIG Insurers or abridge substantive rights belonging to third-parties such as the BSA, Local Councils, and the BSA Trust. Moreover, the AIG Draft Settlement should not be used as an end run around confirmation of the Plan and approval of, among other things, the releases and injunctions included in the Plan.

Simply put, if the Plan Proponents and the AIG Insurers do not have the power to bind the BSA, Local Councils, and the BSA Trust to the proposed settlement under the AIG Insurers Policies or applicable law, nothing in Bankruptcy Rule 9019 gives the Plan Proponents or this Court the power to do so. The non-debtor party whose rights, claims, and interests are being compromised and settled under Bankruptcy Rule 9019 must be properly before the court *and* must consent to the settlement. Here, the BSA, Local Councils, and the BSA Trust have not consented to the AIG Draft Settlement and nothing in the AIG Insurers Policies or the Bankruptcy Code can compel their consent. Accordingly, the AIG Draft Settlement and Proposed Order, require technical modifications, as set forth above, to make clear that nothing therein modifies or abridges the rights of the BSA, Local Councils, or the BSA Trust.

C. <u>Sections 105(a) and 363(b) and (f) of the Bankruptcy Code Do Not Provide Authority to Approve the AIG Draft Settlement as It Relates to the BSA Insurance Policies.</u>

In addition to Bankruptcy Rule 9019, the Motion and Memorandum cite sections 105(a) and 363(b) and (f) of the Bankruptcy Code as authority to approve the AIG Draft Settlement. However, the sale of the AIG Insurers Policies pursuant to section 363 includes "only those policies that were <u>issued to the Debtor</u>." Proposed Order ¶ 2 (emphasis added). Additionally, in furtherance of the proposed sale of the AIG Insurers Policies issued to the Debtor (which does not include BSA Insurance Policies), the Plan Proponents request that the Court issue an injunction pursuant to section 105(a), separate from the channeling injunctions contemplated in the Plan and AIG Draft

Settlement, to "implement the Sale of the Policies." Memorandum section III. Because the BSA Insurance Policies are excluded from the proposed 363 sale of AIG Insurers Policies, and the related channeling injunction must be implemented and approved pursuant to the Plan, sections 105(a) and 363(b) and (f) do not provide any authority to approve the AIG Draft Settlement as it relates to the BSA Insurance Policies.

> D. The Debtor has Failed to Meet Its Burden to Establish that the Settlement is Fair and Reasonable

Even if the Plan Proponents were to modify the AIG Draft Settlement to preserve all of the BSA's substantive rights, the Plan Proponents have still not offered any evidence to demonstrate that the terms of the settlement are fair and reasonable or that the applicable legal standard has been met—nor can they, since the final terms of the settlement have not been filed or served with proper notice and time period to review upon any other parties in interest. While the Debtor cites numerous cases in the Motion and Memorandum for the proposition that the approval of proposed settlements need only be reasonable, fair and in the best interests of the estate, it neglects to provide the fundamental information and evidence necessary for the Court to make such fact-specific determinations with respect to the AIG Draft Settlement. Moreover, it is impossible to conclude that the Debtor entered into such any such settlement in good faith and with sound business judgment where the Debtor itself appears not to have evaluated a final settlement agreement. To be sure, there is no evidence or analysis of what value the Debtor is giving up in exchange for the $18,000,000 Settlement Amount. Without clear and final terms, there can be no way of knowing how much abuse claimants are losing as a result of this settlement and whether they are reasonably compensated for such losses by the Settlement Amount.

The Debtor bears the burden of proof with respect to establishing that the AIG Draft Settlement is fair and reasonable. "Although the bankruptcy court has great latitude in authorizing a compromise, it may only approve a proposal that is fair and equitable to the creditors. . . . And

- 12 -

while a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter, the trustee has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved." *In re Mickey Thompson Ent. Grp., Inc.*, 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003) (internal citations and quotations omitted). A bankruptcy court "may not simply accept the trustee's word that the settlement is reasonable, nor may [it] merely 'rubber-stamp' the trustee's proposal." *LaSalle Nat'l Bank v. Holland (In re American Reserve Corp.)*, 841 F.2d 159, (7th Cir. 1987). This Court must exercise its own independent and informed judgment when considering a settlement proposal and, there can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised him or herself of all facts necessary for an intelligent and objective opinion. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 419, 424 (1968) (reversing and remanding approval of a settlement as part of plan where there were no factual findings by the court or facts in the record sufficient to make an informed, independent decision with regard to the compromise); *Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996) (stating that "the bankruptcy court must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate."); *In re Bondanelli*, No. 2:14-BK-27656-WB, 2020 WL 1304140, at *2 (B.A.P. 9th Cir. Mar. 18, 2020) ("[w]hen assessing a compromise, courts appropriately canvass the issues [and must] amply consider[] the various factors that determine[ ] the reasonableness of the compromise"); *In re Fleming Packaging Corp.*, 2007 Bankr. LEXIS 4234 (Bankr. C.D. Ill. Dec. 20, 2007) ("The court may not simply accept the trustee's representation that the settlement is reasonable. Instead, the court must apprise itself of all facts necessary to evaluate the settlement and make an informed and independent judgment about the settlement.").

The relevant information required for an informed, independent determination of whether a proposed settlement is fair and in the best interests of the estate includes actual facts and not

- 13 -

conclusory statements or allegations proffered by the debtor. *TMT Trailer*, 390 U.S. at 437 ("To make an informed and independent judgment, however, the court needs facts, not allegations."); *see In re HyLoft, Inc.*, 451 B.R. 104, 110 (Bankr. D. Nev. 2011("[The] Trustees must do more than parrot the standards or announce that they are satisfied. Their burden is to persuad[e] the bankruptcy court that the compromise is fair and equitable and should be approved [and] must present a cogent and detailed factual explanation, discussing how the factors apply to the specific litigation and proposed settlement." (internal citations and quotations omitted)).

The Plan Proponents offer no admissible evidence or facts in the Motion or Memorandum to enable the Court to make such a determination, and do not even offer the terms of a final settlement agreement. Instead, the Plan Proponents offer only two pages of sweeping assertions that parrot the applicable standard while offering no factual support. *See* Memorandum § I.A–I.E. At no point do the Plan Proponents provide a baseline analysis of the policies being settled, the claims being released or extinguished, or their methodology for valuing the settled insurance policies relative to such claims. Importantly, the Debtors failed to submit additional evidence or even a supporting declaration on which the Court could base its findings, despite the clear need to do so. *See* Fed. R. Bankr. 9019; *see also* Local Rule 6004-1(2).

In particular, whether the settlement is in the best interest of creditors has not been demonstrated. $18,000,000 *may* be a reasonable settlement if the scope of the releases are clearly limited and the Plan Proponents can offer evidence to support this valuation; however, if the scope of releases remains vague, the Plan Proponents will be unable to clearly demonstrate that the scope of releases are commensurate with an $18,000,000 settlement amount. Importantly, the Plan Proponents and the Lujan claimants assertion that the AIG Settlement Amount of $18,000,000, which amounts to approximately $69,000 per survivor, is a fair and reasonable exercise of the Debtor's business judgment requires additional factual support the Lujan claimants argued that her claims were worth many multiples of that in prior litigation. *See* BSA Opinion, p. 245.

- 14 -

Rather than a complete and carefully crafted compromise, the AIG Draft Settlement appears to be unfinished and dangerously vague. There is no reason for the Plan Proponents to force a hearing on the AIG Draft Settlement when they are simply unprepared. Because the Plan Proponents cannot meet their burden of proof, or even offer final terms for consideration, the Court should consider this settlement at a later date consistent with the Plan, which contemplates hearing Bankruptcy Rule 9019 motions on or after a confirmation hearing on the Plan.

## III. **RESERVATION OF RIGHTS**

The BSA reserves all rights, including, but not limited to, the right to object to any modifications or amendments to the AIG Draft Settlement and to any exhibits, supplements, motions, proposed orders, proposed findings or conclusions, or any other documents related to the AIG Draft Settlement.

## IV. **CONCLUSION**

For all of the foregoing reasons, the Court should deny the Motion, or in the alternative, the BSA requests the Court continue the hearing to approve the settlement until after the Plan Proponents have filed a final settlement agreement and the BSA has had sufficient time to review and respond. In either case, to the extent the Court decides to approve the AIG Draft Settlement, the BSA asks that this Court limit any relief consistent with the Revised Order to appropriately preserve the BSA's and BSA Trust's rights.

RESPECTFULLY SUBMITTED this 16th day of September 2022.

By: */s/ Patrick Civille*
*Counsel for Boy Scouts of America*

- 15 -